# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BELINDA TONEY and**<br>**M.G., her minor child,** | |
| **PLAINTIFFS** | **CIVIL COMPLAINT NO.** |
| **v.** | |
| **DOLLAR TREE, INC., and**<br>**DOLLAR TREE STORE No. 781,** | **JURY TRIAL DEMANDED** |
| **DEFENDANTS** | |

## COMPLAINT

## INTRODUCTION

M.G., an African American 13-year-old boy, patronized the Dollar Tree store that was near his home. When M.G. decided on an item to purchase, he walked to the counter to pay the cashier. Before he could pay, he was accosted by the Store Manager and another male – both Caucasian. The Store Manager forcibly detained M.G. against his will, pushed him against a wall, and falsely accused him of theft. The Store Manager used scare tactics and falsely claimed that the theft was caught on the store's surveillance camera. The Store Manager contacted the local Police Department. Two police officers arrived at the scene.

Belinda Toney, M.G.'s mother, ran to the store to see what happened to her son. When she got there, she was kept outside away from her son. After some time,

the police let her in. The Store Manager rebuffed Ms. Toney and refused her request to see the footage from the surveillance camera.  Instead, the Store Manager and one of the police officers went to a back room and, out of the presence of Ms. Toney and M.G., spent over 30 minutes watching the surveillance footage.  Afterwards, the police officer confirmed that the footage showed no wrongdoing by M.G.  The police officer released M.G., but told him that he was forever barred from the Dollar Store.

This Complaint is predicated on the discrimination of Dollar Tree, Inc. and Dollar Tree Store No. 781 against M.G. on the basis of race, in violation of 42 U.S.C. §1981,  42 U.S.C.§2000(a), and the Pennsylvania Human Relations Act (PHRA), 43 P.S. §951-963, and for the false imprisonment, assault, and battery of M.G.. Additionally, Dollar Tree, Inc. and Dollar Tree Store No. 781 are liable to both M.G. and Ms. Toney for the intentional infliction of emotional distress.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3), and 28 U.S.C. §1367. Venue is appropriate in the Middle District of Pennsylvania, pursuant to 28 U.S.C. §1391, because the events predicating Plaintiffs' claims occurred in this District.

## PARTIES

1.    Belinda Toney is an African-American female who resides in Harrisburg, Pennsylvania.  She is M.G.'s mother.

2.      M.G. is an African-American male and Belinda Toney's minor son.  He resides with his mother in Harrisburg, Pennsylvania.

3.      Dollar Tree, Inc. (DT, Inc.) is a national chain which owns and operates over 15,000 retail stores throughout the United States and Canada.  Headquarters are in Chesapeake, Virginia.

4.      Dollar Tree Store #781 (DT #781) is a discount store located in Harrisburg, Pennsylvania that is owned and operated by Dollar Tree, Inc.

## STATEMENT OF FACTS

5.      Plaintiffs incorporate the foregoing paragraphs, as if fully set forth herein.

6.      On August 31, 2020 M.G. was 13 years old.

7.      M.G. suffers from Post Traumatic Syndrome Disorder (PTSD).

8.      At approximately 8:30 p.m. on August 31, 2020, Belinda Toney gave M.G., permission to go to the nearby DT #781 with two friends.

9.      DT #781 is located in Uptown Plaza in Harrisburg.

10.     Upon information and belief, DT, Inc. owns and operates all of the local DT stores, including DT #781.

11.     Upon information and belief, DT, Inc., hires employees for its local DT stores, including DT #781.

12.     That evening, M.G. wore a mask as a precaution against Covid-19, but his two friends did not wear a mask.

13.    It is a short walk from Ms. Toney's home to DT #781.

14.    About ten (10) minutes after the boys left, M.G.'s friends came rushing into Ms. Toney's house saying that the men at DT #781 would not let M.G. leave.

15.    Ms. Toney immediately ran to the store.

16.    When Ms. Toney got there, she saw Harrisburg police cars in the parking lot.

17.    The doors to DT #781 were locked. Ms. Toney knocked urgently and repeatedly for someone to open the door.

18.    Ms. Toney could see M.G. inside the store.  His clothes were disheveled, and he looked distressed.

19.    Ms. Toney saw two police officers inside.

20.    In addition to the police officers, there were approximately three (3) Caucasian males and one (1) African-American male working in the store.

21.    Eventually, the police unlocked the door and let Ms. Toney inside.

22.    Ms. Toney explained that M.G. was her son, that he has PTSD, and that she must speak to him.

23.    When Ms. Toney asked her son what happened, M.G. said that he wanted to buy pencils and Hershey Kisses, but he did not have enough money.

24.    M.G. said that he put the Hershey Kisses back on the shelf and then walked to the counter to pay for the pencils.

25.     M.G. recounted that the Store Manager and another male  (both Caucasian) stopped M.G., accused him of stealing, locked the store, shook him, and pushed him up against the wall.

26.     M.G. was terrified.

27.     Ms. Toney saw M.G.'s pencils still laying on the counter by the register, which was consistent with what her son had just told her.

28.     M.G. did not have any stolen items.

29.     The Store Manager told Ms. Toney that M.G. was stealing and that he caught it on camera.

30.     Ms. Toney asked to see the footage, but the Store Manager refused her.

31.      Instead, the Store Manager and Police Officer Brent Roadcap went in a back room to view the footage; they were there for over 30 minutes.

32.     When they came back into the store, Ms. Toney asked what was on the footage.

33.     Officer Roadcap said that he simply saw M.G. walking around the store.

34.     The Store Manager insisted that M.G. stole from the store.

35.     Even though the Store Manager and Officer Roadcap watched the video for over 30 minutes, the Store Manager claimed that he did not queue up the portion of the video that showed M.G. stealing.

36.    The only African-American employee at DT #781 told Ms. Toney that he "was not getting involved" in the matter.

37.    Officer Roadcap told Ms. Toney that the store would not press charges against M.G., but that M.G. was no longer permitted in the store.

38.    Officer Roadcap warned that if M.G. tries to enter DT #781 again, he will be trespassing.

## LEGAL CLAIMS

### COUNT I
### VIOLATION OF 42 U.S.C. §1981
### (As to both Defendants)

39.    Plaintiffs incorporate the foregoing paragraphs, as if fully set-forth herein.

38.    M.G. is an African-American male and a member of a racial minority within the class of persons expressly protected by 42 U.S.C. § 1981.

39.    On August 31, 2020, M.G. entered DT #781 to make a purchase.

40.    M.G. walked to the counter with pencils that he intended to purchase, but the Store Manager and another male employee accosted M.G., shook him, pinned him against a wall, and accused him of theft.

41.    The Store Manager and other male employee are Caucasian.

42.     M.G. had the necessary funds to purchase the pencils, but Defendants, by and through their employees and/or agents intentionally blocked or impaired M.G. from

entering into/completing the contractual purchase because M.G. is African-American.

43.    Defendants' refusal to sell pencils to M.G. constitutes intentional discrimination; but for the fact that M.G. is African-American, they would have willingly sold to him.

44.    But for M.G.'s race, Defendants, by and through their employees/agents would not have accused M.G. of theft.

44.    But for M.G.'s race, Defendants, by and through their employees/agents, would not have grabbed and shook M.G. or pinned him against a wall.

45.    But for M.G.'s race, Defendants, by and through their employees/agents, would not have barred M.G. from ever again entering DT #781.

46.    By way of *respondeat superior,* Defendants incur liability, under 42 U.S.C. §1981, for the unlawful actions of their employees/agents.

47.     As the direct and proximate result of Defendants' unlawful discriminatory acts, M.G. has suffered and continues to suffer damage.

48.    The actions of Defendants' intentional and unlawful racial discrimination against M.G. was malicious and displayed such a reckless disregard of M.G.'s rights and wellbeing that the imposition of punitive damages is warranted.

## COUNT II
## TITLE VII
## (As to both Defendants)

49.    Plaintiffs incorporate the foregoing paragraphs, as if fully set forth herein.

50.    Title VII, 42 U.S.C. §2000(a), provides that "all persons shall be entitled to the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination . . . on the ground of race [or] color . . ."

51.    Title VII, 42 U.S.C. §2000(a)-2, further provides that "no person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by §2000(a) or §2000(a)-1 . . . or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by §2000(a) or §2000(a)-1 . . . or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by §2000(a) or §2000(a)-1 . . . ."

52.    Defendants are a "public accommodation" within the meaning of 42 U.S.C. §2000(a).

53.    Yet Defendants unlawfully denied M.G., simply because of his race, the goods, services, and privileges to which he was entitled.

54.    By way of *respondeat superior,* Defendants incur liability, under 42 U.S.C. §2000(a) for the unlawful actions of their employees/agents.

55.    Defendants unlawfully threatened and intimidated M.G. because of his race and interfered in his right to Defendants' good and services, in violation of 42 U.S.C. §2000(a)-2.

56.    Defendants barred (and continue to bar) M.G., because of his race, from patronizing DT #781, in violation of 42 U.S.C. §2000(a) and §2000(a)-2.

57.    As the direct and proximate result of Defendants' unlawful discriminatory acts, M.G. has suffered and continues to suffer damage.

58.    The actions of Defendants' intentional and unlawful racial discrimination against M.G. was – and continues to be – malicious, and in reckless disregard of M.G.'s rights and wellbeing. Accordingly, the imposition of punitive damages is warranted.

### COUNT III
### VIOLATION OF PHRA
### (As to both Defendants)

59.    Plaintiffs incorporate the foregoing paragraphs, as if fully set forth herein.

60.    The Pennsylvania Human Relations Act (PHRA) provides that "the opportunity for an individual to obtain . . . all the accommodations, advantages, facilities and privileges of any public accommodation . . . without discrimination because of race [or] color . . . is a civil right." 43 P.S. §953.

61.    Defendants are "public accommodations" within the meaning of the PHRA. *See* 43 P.S. §954(l).

62.    Yet, Defendants unlawfully denied M.G., because of his race, the goods, services, and privileges to which he was entitled.

63.    By way of *respondeat superior,* Defendants incur liability, under 43 P.S. §951-§963, for the unlawful actions of their employees/agents.

64.    Defendants unlawfully threatened and intimidated M.G., because of his race, and interfered in his right to Defendants' good and services, in violation of 43 P.S. §951-§963.

65.    Defendants barred (and continue to bar) M.G., because of his race, from patronizing DT #781, in violation of 43 P.S. §951-§963.

66.    As the direct and proximate result of Defendants' unlawful discriminatory acts, M.G. has suffered and continues to suffer damage.

67.    The actions of Defendants' intentional and unlawful racial discrimination against M.G. was – and continues to be – malicious, and in reckless disregard of M.G.'s rights and wellbeing. Accordingly, the imposition of punitive damages is warranted.

## COUNT IV
## FALSE IMPRISONMENT (STATE LAW)
### (As to both Defendants)

68.     Plaintiffs incorporate the foregoing paragraphs, as if fully set forth herein.

69.     Without legal justification, DT #781's Store Manager and other male employee accosted M.G. and prevented him from leaving the store.

70.     Without legal justification, DT #781's Store Manager and other male employee detained M.G. at the store against his will.

71.     M.G. had no stolen items. Indeed, M.G. had committed no crime.

72.     DT #781's Store Manager falsely claimed that M.G. stole from the store and that the theft was captured on the store's surveillance video.

73.     DT #781's Store Manager and/or other staff summoned the local police and made the false allegation that M.G. stole from the store.

74.     By contacting the local police, DT #781's Store Manager and/or other staff set in motion the continued detention of M.G. by the local police.

75.     After the police arrived at DT #781, the Store Manager and/or other staff participated and encouraged M.G.s detention by local police, even though there was no legal justification for M.G.'s detention.

76.     The Store Manager's and/or other staff's unlawful detention of M.G. constituted false imprisonment.

77.    By way of *respondeat superior*, Defendants incur liability for false imprisonment, for the unlawful actions of their employees/agents.

78.    As the direct and proximate result of Defendants' unlawful acts, M.G. has suffered and continues to suffer damage.

79.    The actions of Defendants' intentional and unlawful imprisonment of M.G. was malicious and in reckless disregard of M.G.'s rights and wellbeing. Accordingly, the imposition of punitive damages is warranted.

## COUNT V
### ASSAULT AND BATTERY (STATE LAW)
### (As to both Defendants)

80.    Plaintiffs incorporate the foregoing paragraphs, as if fully set forth herein.

81.    DT #781's Store Manager and other male employee grabbed M.G., shook his body, and pinned him against a wall.

82.    The physical contact by DT #781's Store Manager and other male employee was excessive, offensive and unwelcome.

83.    The physical contact by DT #781's Store Manager and other male employee had no reasonable justification; rather, it was due to M.G.'s race.

84.    The physical contact by DT #781's Store Manager and other male employee was intentional and done for the purpose of harming M.G., which constitutes assault and battery under Pennsylvania law.

85.     By way of *respondeat superior*, Defendants incur liability for assault and battery, due to the unlawful bodily contact made by their employees/agents with M.G.

86.     As the direct and proximate result of Defendants' unlawful acts, M.G. has suffered and continues to suffer damage.

87.     The actions of Defendants' assault and battery of M.G. was malicious and in reckless disregard of M.G.'s rights and wellbeing. Accordingly, the imposition of punitive damages is warranted.

## <u>COUNT VI</u>
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (STATE LAW)
### (As to both Defendants)

88.     Plaintiffs incorporate the foregoing paragraphs, as if fully set forth herein.

89.     DT #781's Store Manager and/or other employees/agents targeted M.G. because of his race and falsely accused him of theft.

90.     DT #781's Store Manager and/or other employees/agents grabbed M.G., shook his body, and pinned him against a wall; they detained M.G. against his will; and they summoned the local police on the pretext that M.G. stole goods from the store.

91.     Officer Roadcap concluded that there was no evidence that M.G. stole anything from the store.

92.     M.G. did not have any stolen goods. Indeed, M.G. had not committed any crime.

93.    DT #781's Store Manager and/or other employees/agents purposely acted to cause M.G. fear, trepidation, and emotional distress.

94.    Notwithstanding M.G.'s innocence, Defendants have barred – and continue to bar – M.G. from patronizing DT #781.

95.    By way of *respondeat superior*, Defendants incur liability for intentional infliction of emotional distress, due to the unlawful conduct of their employees/agents.

96.    Defendants' actions were – and continue to be – extreme and outrageous, altogether lacking in any legal justification; rather, they were motivated by racial animus.

97.    Defendants actions were done with reckless disregard of M.G. statutory rights.

98.    As a result of being wrongly accused, assaulted, man-handled, and detained against his will, M.G. has suffered and continues to suffer severe emotional distress including, but not limited to, fear of entering retail establishments alone.

99.    Defendants' actions were malicious, and displayed such a reckless disregard of M.G.'s rights and wellbeing that the imposition of punitive damages is warranted.

100.    Additionally, DT #781's Store Manager and/or other employees/agents prevented Ms. Toney from getting to her son when he was being detained and interrogated by store employees and the police. They kept Ms. Toney locked outside despite her urgent knocks and insistence on being let in.

101.   DT #781's Store Manager and/or other employees/agents engaged in this treatment because of Ms. Toney's race. Upon information and belief, Caucasian parents are not separated from their children at Dollar Tree stores under similar circumstances. Moreover, upon information and police, Caucasian parents do not have to suffer the distress of their children being falsely accused of crimes at Dollar Tree stores.

102.   By way of *respondeat superior*, Defendants incur liability for intentional infliction of emotional distress, due to the unlawful conduct of their employees/agents towards Ms. Toney.

103.   Defendants' actions towards Ms. Toney were – and continue to be – extreme and outrageous, altogether lacking in any legal justification; rather, they were motivated by racial animus.

104.   Defendants actions were done with reckless disregard of Ms. Toney's statutory rights.

105.   As a result of being kept from her son, watching her son be wrongfully accused and detained against his will, Ms. Toney has suffered and continues to suffer severe emotional distress.

106.   Defendants' actions were malicious, and displayed such a reckless disregard of  Ms. Toney's rights and wellbeing that the imposition of punitive damages is warranted.

## REQUESTED RELIEF

Wherefore, Plaintiff respectfully requests:

a.      Compensatory damages as to all Defendants;

b.      Punitive damages in an amount sufficient to punish Defendants and deter such conduct in the future;

c.      Reasonable attorneys' fees and costs;

d.      Declaratory, injunctive, and other equitable relief; and

e.      Such other and further relief as may appear just and appropriate.

Plaintiffs hereby demand a jury trial.

Dated: December 2, 2021              Respectfully submitted,

/s/ Leticia C. Chavez-Freed
LETICIA C. CHAVEZ-FREED, ESQUIRE
Pennsylvania Identification No. 323615

THE CHAVEZ-FREED LAW OFFICE
2600 North 3rd Street | Second Floor
Harrisburg, PA 17110
717-893-5698 (phone) | 717-635-8524 (fax)
leticia@chavez-freedlaw.com

/s/ Alexandria J. Lappas
ALEXANDRIA J. LAPPAS, ESQUIRE
Pennsylvania Identification No. 319331

THE CHAVEZ-FREED LAW OFFICE
2600 North 3rd Street | Second Floor
Harrisburg, PA 17110
717-893-5698 (phone) | 717-635-8524 (fax)
alexandria@chavez-freedlaw.com

*Counsels for Plaintiff*